## OCTOBER TERM, 1791.

### JOHN DOUGHERTY *v.* WILLIAM CROW.

*In Chancery.*

John Dougherty, on the 14th day of November, in the year 1779, obtained from the commissioners for the district of Kentucky, the following certificate, to-wit:

"John Dougherty this day claimed a settlement and pre-emption to a tract of land lying on the waters of Dick's river, known by the name of the Locust Thicket, by settling on the said place and raising a crop of corn in the year 1776. John Cowan, on behalf of David Cowan, heir-at-law to James Cowan, deceased, came into court and alleged that the said decedent made a prior improvement on the said land, and that he raised a crop of corn in this country in the year 1774.

"Whereupon sundry witnesses were sworn and examined, upon which the court are of opinion that the said Dougherty has a right to a settlement of 400 acres of land including the said improvement, and the pre-emption of 1000 acres adjoining, and that a certificate issue accordingly."

And on the 10th day of January, in the year 1780, entered his certificate with the surveyor in the following words, to-wit:

"John Dougherty enters 400 acres by virtue of a certificate, etc., lying on the waters of Dick's river known by the name of the Locust Thicket."

And having obtained a pre-emption warrant, entered the same with the county surveyor on the 29th day of April, 1780, in the following words, to-wit:

"John Dougherty enters 600 acres upon a pre-emption warrant, adjoining his settlement at the Locust Thicket on the east side, joining Gilmore's settlement; also 400 acres on the west side of his settlement."

And on the 18th day of May, 1781, withdrew and re-entered part of his pre-emption entry in the following words, to-wit:

"John Dougherty withdraws 20 acres, part of his entry of 600 acres upon his pre-emption warrant adjoining his settlement at the Locust Thicket on the east side, etc."

"John Dougherty enters 20 acres upon part of his pre-emption warrant, to adjoin his former entry of 400 acres, on the south side thereof."

George Clark, on the 29th day of October, in the year 1779, obtained from the commissioners for the district of Kentucky the following certificate, to-wit:

George Clark this day claimed a right to a settlement and pre-emption to a tract of land lying on the waters of Clark's run, it being the same land where the said Clark now lives, by improving the same in the year 1776, and raising corn in the country in the year 1777. Satisfactory proof being made to the court, they are of opinion that the said Clark has a right to a settlement of 400 acres including the said improvement, and the pre-emption of 1000 acres adjoining, and that a certificate issue for the same."

And William Crow, on the 25th day of April in the year 1780, having also made application for a settlement and pre-emption, the following entry was made in the commissioners' books, to-wit:

"William Crow this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of raising a crop of corn in the country in the years 1776 and 1775, and offered to locate the same on Clark's run, whereon George Clark now lives; for which he, the said Clark, has obtained a certificate, who appeared, and the parties agreed to submit the matter to the court. Postponed until to-morrow to be further considered."

And on the following day, April 26, 1780, an exchange was agreed upon between the said George Clark and the said William

Crow, in consequence of which the following entry was made in the commissioners' books, to-wit:

"William Crow and George Clark this day appeared agreeable to an order of this court, the 25th instant; witnesses were sworn and examined, in consideration of which, the said court are of opinion that the said William Crow has a right to a settlement of 400 acres of land to include the said Crow's improvement, which is on land now in dispute, and the pre-emption of 1000 acres adjoining, and that a certificate issue accordingly. The parties agreeing to exchange their certificates and assign them, accordingly William Crow came into court and locates his land on the waters of the north fork of Licking creek, adjoining the middle fork of Lawrence's creek, and adjoining George Dicken's pre-emption, including three cabins of Simon Butler. Ordered that a certificate issue accordingly."

The said William Crow, on the 12th day of January in the year 1780, made the following entry by virtue of his certificate for settlement, to-wit:

"William Crow, assignee of George Clark enters 400 acres, by virtue of his certificate, etc., lying on the waters of Dick's river, it being land whereon the said Clark now lives."

And on the 17th day of October, in the year 1780, also entered the pre-emption with the county surveyor in the following words, to-wit:

"William Crow, assignee of George Clark, enters two pre-emption warrants of 1000 acres in the whole, adjoining his settlement on the north and south side of said settlement, Stephen Fisher on the south side of said Fisher, including Dougherty's station, extending south for quantity."

The annexed connected plat, No. 17, was returned in this cause, of which the following is an explanation:

Dougherty *v.* Crow.

1 2 3 4, Dougherty's settlement survey, containing 496 acres.   2 5 6 7 8 9 10, John Dougherty's pre-emption survey of 646 acres. 11 12 13 14, John Dougherty's pre-emption survey of 540 acres. A B C D . . . . . . William Crow's settlement survey of 406 acres and 14 poles.   A D E F G H, William Crow's pre-emption survey of 415 acres and 99 poles.   B C I K, William Crow's pre-emption survey of 514 acres and 10 poles.   *a o*, the place where John Dougherty raised corn in 1776.   *b*, Michael Horine's spring.   *c o*, William Crow's old improvement, where the widow Miller lives. *d*, John Dougherty's dwelling house.   *e*, William Logan's cabin and spring.   *f*, Clarke's spring and old station.   *g*, George Clark's old house.   *h*, Dougherty's mill.   *o o*, the place where William Crow improved in 1774, and where he now lives. L M N O, James Brown's settlement survey.   *o* B, his improvement.   11 15 16 17, William Logan's settlement of 400 acres.   25 to 26, said by complainant to be the line of Geo. Clark's settlement as surveyed by him.   8 18 19 20 21 22 23 24, John Dougherty's treasury warrant of 200 acres.   21 22 23 24, Kirkley's 50 acres, military warrant. P to R, shown by defendant as Gilmore and Dougherty's conditional line.   S T U V, part of Patrick Shone's pre-emption.   The small water course, Clark's run : the large one the Hanging fork of Dick's river.   The interference between William Crow's settlement and part of his pre-emption, with John Dougherty's pre-emption, is 156 acres.

The certificates and entries of the other claims which are laid down on the connected plat, and which were produced at the trial, are as follow, to-wit :

*October* 20, 1779.

"William Logan this day claimed a right to a settlement and pre-emption to land in this country. On satisfactory proof being made to the court, that the said Logan made a crop of corn in this country in the year 1776, and resided in this country twelve months before the passing of an act of assembly for opening the land office, they are of opinion that the said Logan has a right to a settlement of 400 acres of land, with the pre-emption of 1000 acres adjoining or convenient to St. Asaph's."

*November* 6, 1779.

"It was proved to this court at St. Asaph's, that William Logan was entitled to a settlement and pre-emption in this district, came into court and located the said land, lying on Clark's run, joining John Dougherty to the west, whereon there is a cabin built, to include the said cabin, and that a certificate issue accordingly."

*December* 28, 1779.

"William Logan enters 400 acres in Kentucky county by virtue of a certificate, etc., lying on Clark's run, on the road that leads from the Boiling spring to the Knob lick."

*May* 26, 1780.

"William Logan enters 400 acres upon a pre-emption warrant, adjoining the said Logan's settlement on the north and north-east side on the waters of Clark's run below Dougherty's station."

*July* 17, 1781.

"William Logan enters 400 acres, by virtue of part of a pre-emption warrant, No. 583, adjoining on the north and north-west of his settlement. Also 200 acres, upon part of the above warrant, No. 583, lying on the east and north side of his pre-emption survey of 400 acres."

*February* 12, 1780.

"Patrick Shone, by Edward Worthington, this day claimed a settlement and pre-emption to a tract of land, in the district of Kentucky, on account of raising a crop of corn in the year 1776, lying about one mile partly an east course from Givens' station, on the Hanging fork of Dick's river, at a rock spring, to include a cabin built by Archibald McNeil. Satisfactory proof being made to the court, they are of opinion that the said Shone has a right to a settle-

ment of 400 acres of land, to include the above location, and the pre-emption of 1000 acres adjoining, and that a certificate issue accordingly."

*February* 21, 1780.

" Patrick Shone enters 400 acres by virtue of a certificate, etc., lying about one mile partly an east course from Givens' station, on the waters of the Hanging fork of Dick's river, at a rock spring, to include a cabin built by Archibald McNeil."

*June* 19, 1780.

" Patrick Shone enters a pre-emption of 1000 acres, adjoining his settlement, and around the same, on the waters of Dougherty's run."

William Crow, the defendant, having obtained the eldest grant, had served a declaration in ejectment, on the complainant, John Dougherty, returnable to the county court of Lincoln, and had obtained a judgment, to stay proceedings on which, until the title was heard in equity, this suit was brought, and an injunction granted.

It appeared by the bill, answer and depositions, that the place called the Locust Thicket, was where Michael Horine then lived, and included the spring described on the connected plat as Michael Horine's spring, and that the place at which Dougherty settled and raised corn in 1776 is described on the connected plat *a o ;* and also, that the place where Dougherty has since lived, described on the plat by the letter *d,* was never known by the name of the Locust Thicket.

It appeared also, that the defendant had improved in the year 1774, at the two springs near Clark's old station, which are designated on the plat, by the marks *o o,* and which is the place at which he has since lived, and that he also, about the same time, improved at the place designated in the connected plat, C O, where the widow Miller has since lived and built a cabin there : that he made choice of the said land as his future place of residence, and agreed upon a dividing line between himself and John Crow, which was to run north and south, near the spring at Clark's old station.

That he came to the country in 1776, intending to settle on said land, and raise a crop of corn on it, and actually did raise a crop

of corn at Fisher's station, and that afterward, in the year 1776, he left the country, and did not return until some time in the month of April, in the year 1780.

It appeared that George Clark, after the departure of the defendant from the country, had also settled on and improved the said land; that he obtained a certificate from the commissioners, and had actually entered and surveyed his settlement before the defendant returned. That the commissioners being satisfied, on the application of the defendant, that he had the best right to the land, but believing that if they granted it to him, the said George Clark would entirely lose his claim, endeavored to bring about an exchange between the defendant and the said George Clark.

That the said George Clark, agreeing to withdraw his entry and survey, which the defendant supposed to be made contrary to the ancient agreement between himself and John Crow, the defendant received the certificate before set forth, which he entered for Clark, on a location furnished by him on Lawrence's creek, and took an assignment of the certificate, which had been granted to the said Clark.

There was some testimony in the cause, respecting a dividing line, between the complainant and James Gilmore, and an agreement between the complainant and William Logan; but as it appears not to have been material, or considered by the court, it is omitted.

The cause was argued at the September term, in the year 1787.

For the complainant, it was urged, that Crow's right, under which he originally claimed, could only be considered as a village right, therefore inferior in point of dignity to Dougherty's, which was an actual improvement; that if Crow's original right was to be considered as equal to an actual improvement, yet that ought not to avail, because by an exchange he had made with Clark, who had improved on the same land, and whose improvement was younger than Dougherty's, he ought to be considered only as coming in the place of Clark, therefore inferior to Dougherty; and because Dougherty having claimed a grant for the land in question, although there was included in his survey on which the grant was founded, about 300 acres of land more than the quantity allowed for the settlement and pre-emption, Crow could not get the land in question by any other means, than by pursuing the method of proceeding directed by the act of assembly concerning surplus lands.

To this it was answered that Crow's right could by no means be

Dougherty v. Crow.

considered as a village right, because he had never been in a situation that would denominate him a villager; but had, after making his improvement, been obliged, for safety, to reside for some time (not in a village) but in a station, which circumstance alone, had prevented him from making corn on the premises; therefore his right ought to stand on as good a footing, as any improvement whatever. That with respect to the exchange with Clark, it ought not to operate to his prejudice, because the commissioners having granted a certificate to Clark, was owing (as appeared in evidence) to their want of information respecting Crow's claim— of which they, the commissioners, were so fully sensible, after hearing and considering the whole matter, that they earnestly recommended an exchange between Crow and Clark, as it was out of their power to revoke Clark's certificate, and if he himself was to withdraw it, he would run a risk of losing his claim altogether; and farther, that considering all the circumstances, Crow ought, in equity, to be considered as fully entitled to the benefit arising from his original right; that Crow has a grant for the land in question, elder than Dougherty's, and even with that very disputed land, he falls short of the quantity he is by law entitled to.

BY THE COURT.—Crow can by no means be considered as a villager, nor his right as a village right. It was not his fault that he was obliged to reside in a station, and thereby prevented from, making corn on the premises; but it was owing to the situation of public affairs, which put it out of the power of government to protect fully the citizens in this part of the state. It would therefore be unjust to consider him as a villager in this case, as it would be punishing him, not for his own fault or omission, but for the weakness of government. Equity, it would seem, requires that on this occasion, considering all circumstances, Crow ought to stand on the footing on which his original improvement would place him; but it is not necessary for the court to determine that point, in the present case.

Crow has the eldest grant, and falls short of the quantity of land to which he is by law entitled. Dougherty has the youngest grant, and by his survey (though perhaps not by his grant) 300 acres, or thereabouts, more land than he is by law entitled to.

Nothing, therefore, could be more absurd than to consider any part of the land included in Crow's grant as surplus land in Dougherty's; such a determination would be contrary to reason and common sense, as well as to equity.

4

By a rational construction of the law respecting surplus lands, it is impossible to extend it to such a case as this. That law could never intend any thing to be surplus land that was included in another and elder grant; beside, it is unreasonable to suppose that the law was intended for the benefit of such persons as had got or might by some means get, probably innocently or without fraud, surplus lands, at the same time that justice was done to the state. But if it is construed to extend so far as to include every case where there may be surplus lands, by whatever means obtained, it would open a door to gross frauds.

In the present case, Dougherty is entitled to 1,400 acres of land, and in his survey 1,700 acres are included. There is no suspicion of fraud in the surveyor in this case, but surely there is a most egregious blunder, of which it does not seem consistent with fairness and equity to take advantage.

By an equitable, indeed the more favorable, construction for Dougherty of his entries, that reason and justice and the former decisions of the court will admit, his entries will not come near the land in dispute; so that his whole claim to the land in dispute stands on his survey only, which can be no sufficient foundation to rest upon.

Admitting the survey of the settlement to be such as his entries will justify, and leaving him to use his pleasure with respect to his entries on his pre-emption as he has done, there will then be near about 150 acres of land between him and Crow, which his entries do not extend to, whatever his survey may.

Injunction dissolved and bill dismissed; from which the complainant prayed an appeal.

And at a court of appeals held in Richmond, at the June term, 1791, the said decree was affirmed, and having been opened at the present term by consent of parties, in order to enable the complainant to claim the value of his improvements, etc., and a report having been made by the commissioners appointed to value the improvements, and ascertain the rents and profits, etc., by which the accounts were reported to be balanced. It was now decreed and ordered that the complainant's bill should be dismissed, and that he should pay costs, etc.

NOTE.—It appears that William Crow's entry on certificates bear date before the time of obtaining his certificate. It does not appear by the papers how this happened, but it is more than probable that George Clark assigned both the certificate and the entry

on it as actually made, but how the entry stands on the surveyor's book, as made in the name of William Crow, assignee, etc., before Crow had a right to enter at all, can not be satisfactorily accounted for.

It is also worthy of remark, that although it was contended by the defendant's counsel, and seems to have been admitted by the court, that Crow was driven for safety into a station, in 1776, the fact did not appear in evidence in the cause; on the contrary, Crow states in his answer the reason why he made corn at Fisher's station and not on his own land, in the following words, to-wit: "that he made further improvements thereon, in 1775, and came to the country in 1776, with a view to settle on said land and to raise a crop of corn, but meeting with unavoidable delays, he found it was too late in the season to make the necessary preparation on said land, therefore he went and raised a crop of corn at Fisher's station," etc.